UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARQUA MCCOY #711561,

           Plaintiff,

        v.

TODD BASTIAN, *et al.*,

           Defendants.

_____/

Case No.   2:23-cv-48

Hon. Robert J. Jonker
U.S. District Judge

## **REPORT AND RECOMMENDATION**

### I.  Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment, Plaintiff's response in opposition, Defendants' reply to Plaintiff's response, and Plaintiff's unauthorized sur-reply.   (ECF Nos. 37, 40, 41, 42.)

State prisoner Marqua McCoy filed suit pursuant to 42 U.S.C. § 1983 on March 20, 2023.   (ECF No. 1.)   In McCoy's verified complaint, he asserted that while he was incarcerated at the Baraga Correctional Facility (AMF) in Baraga, Michigan, five Michigan Department of Corrections (MDOC) employees at AMF – (1) Asst. Deputy Warden (ADW) Haynie, (2) Resident Unit Manager (RUM) Stromer, (3) Acting Resident Unit Manager (A/RUM) Bastian, (4) Sergeant (Sgt.) Coronado, and (5) Corrections Officer (CO) Holley – retaliated against him in violation of his First Amendment rights.   (*Id.*)   More specifically, McCoy alleged that after he started filing grievances at the facility, Defendants harassed him, threatened him, issued

1

false misconduct tickets against him, and interfered with the reduction of his security classification.   (*Id.*)

On June 28, 2023, ADW Haynie and RUM Stromer filed a motion to dismiss for failure to state a claim against them.   (ECF No. 25.)   The Court granted the Defendants' motion and dismissed Haynie and Stromer on October 12, 2023.   (ECF No. 25 (R&R), ECF No. 29 (order adopting R. & R.).)

On March 18, 2024, the remaining three Defendants – A/RUM Bastian, Sgt. Coronado, and CO Holley – moved for summary judgment.   (ECF No. 37.) Defendants asserted that McCoy could not satisfy all three elements of a First Amendment Retaliation claim for each remaining Defendant.   (*Id.*)   They argued that McCoy's claim failed on the causation element for CO Holley, the adverse action and causation elements for Sgt. Coronado, and the adverse action and causation elements for A/RUM Bastian.   (*Id.*)   Defendants also assert that because they did not violate McCoy's clearly established constitutional rights, they are entitled to qualified immunity.   (*Id.*)

In the opinion of the undersigned, Defendants have shown that no genuine issue of material fact exists as to McCoy's claims against Defendant Holley, Defendant Coronado, nor Defendant Bastian in relation to the April 15, 2022 and April 26, 2022 allegations.   However, in the opinion of the undersigned, a genuine issue of material fact does exist as to one of McCoy's claims, specifically his claim against Defendant Bastian for his alleged actions on April 8, 2022.   In addition, because there is no evidence of a violation of a clearly established constitutional right,

it is respectfully recommended that the Court rule that CO Holley and Defendant Coronado are entitled to qualified immunity.   The undersigned also concludes that Defendant Bastian is entitled to qualified immunity for the alleged retaliation on April 15, 2022 and April 26, 2022, but not April 8, 2022.

It is respectfully recommended that the Court grant Defendants' motion in part and deny in part, as follow:

- grant Defendant Holley's motion for summary judgment,

- grant Defendant Coronado's motion for summary judgment,

- deny Defendant Bastian's motion for summary judgment as to his alleged threat of retaliation on April 8, 2022,

- grant Defendant Bastian's motion for summary judgment as to his alleged threat of retaliation on April 15, 2022,

- grant Defendant Bastian's motion for summary judgment as to his alleged conspiratorial act on April 26, 2022., and

- strike McCoy's unauthorized sur-reply.

If the Court adopts this recommendation, only McCoy's retaliation claim against Bastian for retaliation occurring on April 8, 2022 will remain in the case.

## II.   Factual Allegations

McCoy's allegations against Bastian, Coronado, and Holley were set forth in the undersigned's October 12, 2023, R. & R., which provided in the pertinent part:

> McCoy says that on April 8, 2022, Defendant Bastian approached his cell door to talk to McCoy about a package. (ECF No. 1, PageID.3.) While they were speaking, McCoy says that Bastian stated: "I hope you don't plan on filing anymore stupid grievances." Bastian allegedly told McCoy

3

that if he did file more grievances, Bastian or one of his co-workers would put McCoy in administrative segregation. (*Id*.) McCoy says that he filed a grievance regarding this conversation.

On April 15, 2022, McCoy says that he spoke with Defendant Bastian again. This time, McCoy and Bastian were supposed to discuss a Notice of Intent that McCoy had received. (*Id*., PageID.4.) Instead, Bastian "abruptly changed the conversation" to discuss McCoy's recent grievances. Bastian allegedly told McCoy to "stop writing grievances because most of them were stupid and had no merit." (Id.) During this encounter, Bastian specifically referenced an April 7, 2022 grievance that McCoy had written against Bastian for reading McCoy's legal materials. After the conversation ended, McCoy says that he filed yet another grievance. (Id.) McCoy says that during the investigation into this grievance, Bastian admitted that he had confronted McCoy about his grievances but claimed that it was only to remind McCoy that policy required him to attempt resolution with staff before turning to the grievance process.

McCoy says that on April 23, 2022, Defendant Holley approached his cell and told McCoy to take his jacket off of the cell window. (Id.) After McCoy only partially removed the jacket from the window, Holley approached again and told McCoy to take the entire jacket off of the window. McCoy says that he apologized and removed the entire jacket, but that Holley began to whisper to him, stating: "Don't worry you keep writing grievances on my coworkers now it's my time to get you. I'm going to hit you were [sic] it hurts." (Id.) McCoy says that he filed a grievance regarding this interaction, but that on the same day, Holley issued a false misconduct ticket against him for threatening behavior. (Id., PageID.4-5.) In that ticket, Holley alleged that McCoy had "[w]alked towards the back window then turned around with direct eye contact and with a clenched right fist said [']I'm going to take the jacket down. I am going to take you down and you['re] never going to get up.[']" (Id., PageID.5.) McCoy says that he was placed in administrative segregation on the same day based on Holley's allegations.

McCoy further claims that while in segregation on April 23, 2022, Defendant Coronado approached his cell. (Id.) According to McCoy, Coronado asked whether McCoy knew why he was in segregation, and when McCoy responded in the negative, Coronado stated: "[B]ecause you're a n— who writes grievances, next we'll steal your property." McCoy says that he again authored a grievance relating to this interaction. (Id.)

4

McCoy next alleges that on April 26, 2023, he received his security classification screen review. McCoy says that Defendant Bastian "who previously threatened to delay plaintiff's proper classification to a lower security conspired with defendants Bradley and Hayine [sic] to delay Plaintiff's security classification to a lower security." (Id.) McCoy again filed a grievance. Finally, on May 9, 2022, McCoy says that he was heard on the April 23, 2022, threatening behavior misconduct ticket. McCoy says that he alleged the ticket was retaliatory, but that the charges were nonetheless upheld. (Id.)

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)

(en banc).   In order to establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.   *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."   *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

An adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.   *Thaddeus-X*, 175 F.3d at 396. Misconduct tickets are often recognized as adverse actions sufficient to support a retaliation claim.   *See Brown v. Crowley,* 312 F.3d 782 (6th Cir. 2002) (finding that the issuance of a major misconduct ticket, which subjected the prisoner to a risk of segregation, loss of good time, and a longer term of incarceration, was sufficiently adverse); *Maben v. Thelen*, 887 F.3d 252, 266-267 (6th Cir. 2018) (finding that the issuance of a minor misconduct ticket was sufficiently adverse where the prisoner lost privileges and could have been confined to his cell).   Furthermore, "the threat of adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lapin*, 630 F.3d 630 F.3d 468, 472 (6th Cir. 2010).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.   *Smith v. Campbell*, 250 F.3d 1032,

1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach with respect to the

causation element:

> Once the plaintiff has met his burden of establishing that his protected
> conduct was a motivating factor behind any harm, the burden of
> production shifts to the defendant. If the defendant can show that he
> would have taken the same action in the absence of the protected
> activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

### A.   CO Holley

McCoy says that CO Holley retaliated against him for writing grievances by

writing a misconduct report for Threatening Behavior on April 23, 2022.   (ECF No.

1.)   CO Holley argues that McCoy cannot prove the causation element of his

retaliation claim because the Administrative Law Judge (ALJ) who conducted

McCoy's Class I misconduct hearing found him guilty of engaging in threatening

behavior.   (ECF No. 38, PageID.119.)   Holley asserts that McCoy is precluded from

denying that he engaged in threatening behavior.   (*Id.*, PageID.120.)   Holley also

asserts that he is entitled to summary judgment because he can demonstrate that he

would have taken the same action in the absence of the alleged protected activity

because he had no choice under MDOC policy but to issue the misconduct ticket.

(*Id.*, PageID.122.)

The Sixth Circuit test for determining whether factual findings made within a

Class I misconduct hearing are entitled to preclusive effect was established in

*Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)) (rejecting the checkmate doctrine but upholding the preclusive effect of major misconduct hearing findings when appropriate factors are met).   Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts.   *Maben*, 887 F.3d at 259, (*citing Peterson*, 714 F.3d at 911−13).   The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied.   *Peterson*, at 912−14.   The facts here show that each of the *Peterson* requirements is satisfied.

First, the Hearing Officer or ALJ acted in a judicial capacity during the Misconduct Hearing, reviewing evidence and allowing the parties an opportunity to seek review of adverse findings.   *See id.* at 912.   The Misconduct Hearing Report relating to the misconduct ticket written on May 9, 2022 by Thomas O. Mohrman states:

**CLASS I MISCONDUCT HEARING REPORT** · 31 ✓    Rev. 10/10

| Prisoner | Prisoner Name | | Facility Code | Lock | Violation Date |
|---|---|---|---|---|---|
| 711561 | McCoy | | AMF | 1 118 | 04/23/2022 |

| Charge(s) | |
|---|---|
| Threatening Behavior | page 1 of 2 |

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty        ☐ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☐ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☐ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Misconduct held timely within limits set by MDOC PD 03.03.105(BB).  Hearing held via Tele-video conferencing.
Prisoner's oral statement at hearing: The prisoner said he has mental health issues and did not feel comfortable discussing that with the H.I.  He needed to talk to a professional.  He said he is not sleeping.
Hearing is adjourned to get a psychological evaluation of the prisoner per MDOC PD 03.03.105(FFF).  There is good cause to delay the time to hear this charge as the prisoner requested the evaluation and could have done so timely but waited until this late date.  See MDOC PD 03.03.105(BB)2; MDOC Hearings Handbook (III)(D)(2)(d).  Please determine if the prisoner was responsible for his actions on 4-23-2022 and could have followed MDOC rules of conduct and behavior.  ALJ Mohrman 5-2-2022.
5-9-2022 reconvened with prisoner present.  This is now heard past time limits but I find good cause as indicated above.  The assessment as requested is now in the record and the prisoner was responsible for his behavior.
The investigation was read and reviewed with prisoner which included: Hearing packet is 18 pages.  Each document is one page unless noted.  The misconduct sanction screening and assessment forms (2 pgs.).  SEE PAGE TWO

**REASONS FOR FINDINGS**

Threatening Behavior (012) MDOC PD 03.03.105 Words, actions or other behavior which expresses an intent to injure or physically abuse another person.  I conclude that the prisoner had sufficient witnesses.  He asked for 7 who would have been able to hear the incident as they were most likely in their respective cells; only two answered the questions and one of those said he was asleep.  I find no reason to believe this officer wrote this charge because the prisoner had written a grievance on another staff member.  The prisoner admitted in the grievance he had added to the record he did have the jacket hanging in the back window and that he was told to take it down; he also admitted that while he 'complied' he had not taken it completely down.  He also claimed the officer then confided in him he was fabricating misconducts.  That is not likely, logical or believed.  He would not likely confide in the prisoner and tell him he was going to fabricate misconducts.  That makes his credibility suspect.  The prisoner was upset and told the officer he was going to take the jacket down and then went on to tell the officer "I am going to take you down and you're never going to get up!" This was a comment indicating his intent to attack, injure and physically abuse if not kill the officer.

**PROPERTY DISPOSITION (for contraband see PD 04.07.112)**

N/A

**FINDINGS**

| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code  012 |
|---|---|---|---|---|

(ECF No. 38-2, PageID.137.)

MICHIGAN DEPARTMENT OF CORRECTIONS ·   ▱¹    CSJ-240D  12/90
                                                       4835-4243

| Class 1 | **HEARING REPORT – Continuation Page No.**  2 |
|---|---|
| (Type of Hearing) | |

| Prisoner Number | Prisoner Name | Institution | Violation/Notice Date |
|---|---|---|---|
| 711561 | McCoy | AMF | 4-25-22 |

**EVIDENCE/ STATEMENTS:**  from page one

(Item in record.)  Prisoner presented 4 pages.  This consisted of his statement and requests for documents.  The prisoner is not need a count sheet to have prisoner listed to obtain a witness list.  Count sheets are confidential.  His lack of one did not prevent him from requesting witnesses.  Documents (grievances written on him) requested are not necessary as they would not show his report was the result of retaliation.  He did place one in the record which was about this incident.  Other misconducts he had received are not necessary; they would not tell me this was retaliation.  Prisoner requested 8 witness; two responded and five declined.  The block rep was not present so not necessary as a witness.  H.I. statement.
The prisoner said there was a conspiracy at AMF for staff to write threatening behavior tickets on prisoners if they wrote grievances on any staff member which is what this officer did.
The prisoner was told findings and issued a sanction.  The report was then typed outside the prisoner's presence.

(*Id.*, PageID.138.)

McCoy appealed this decision.    His appeal was denied because the Hearings Administrator found that the ALJ's decision was "supported by competent, material, and substantial evidence."   (*Id.*, PageID.160.)

Second, the ALJ resolved a disputed fact – whether McCoy had threatened Holley.   The ALJ found that McCoy made a threatening statement.    Although McCoy argues he was entitled to a rehearing because he "never received a[n] adequate mental health evaluation" and the "MDOC staff conspired" against him, the facts show otherwise.   (ECF No. 1-1, PageID.13.)

Third, McCoy had a sufficient opportunity to litigate the issue.    At the initial misconduct hearing, McCoy expressed that "he has mental health issues and did not feel comfortable discussing that with the H.I." and that he "needed to talk to a professional" because "he is not sleeping."   (ECF No. 38-2, PageID.154.)    The hearing was adjourned so that McCoy could receive a psychological evaluation per MDOC PD 03.03.105(FFF).   (*Id.*)   In an April 25, 2022 assessment, an MDOC staff member noted that McCoy was not experiencing sudden weight loss due to his mental health, was not experiencing delusions, and was not receiving medication or other mental health treatment at that time.   (*Id.*, PageID.140.)    An assessment completed May 4, 2022 showed that McCoy did not have a mental disability and did not have mental limitations that would affect the alleged misconduct.   (*Id.*, PageID.155.)

When the misconduct hearing reconvened on May 9, 2022, the ALJ explained the reasons for his findings.   (*Id.*, 137−38.)   While McCoy asked seven inmates to

serve as witnesses, only two elected to participate in the investigation process.   (*Id.*, PageID.147−53.)   One individual stated that he was asleep during the incident and another stated that "not once did I hear McCoy say anything to c/o Holley."   (*Id.*, PageID.148.)   The ALJ considered these statements and those made in McCoy's four page statement and found that the allegations of conspiracy were not "likely, logical or believed."   (*Id.*, PageID.137.)   The ALJ found that McCoy's statement indicated his intent to attack, injure and physically abuse if not kill the officer.   (*Id.*)

In the opinion of the undersigned, McCoy had the opportunity to litigate the issue regarding whether he made a threatening statement and he is now precluded from asserting otherwise in this case.

Nevertheless, this Court must determine whether a reasonable jury could find that, even though McCoy engaged in threatening conduct, CO Holley issued the misconduct ticket due to his protected speech.   *White v. McKay*, No. 22-192 (6th Cir., Nov. 17, 2023).   It is the opinion of the undersigned that no reasonable jury could conclude that Holley issued a threatening behavior misconduct due to Cromer's protected speech.

Under MDOC policy Holley was **<u>required</u>** to write McCoy a Class I misconduct ticket due to his threatening statement.   The policy provides that "[a] Misconduct Report shall be written if the behavior constitutes a non-bondable Class I misconduct, as identified in Attachment A." (ECF No. 95-14, PageID.799 (Policy Directive 03.03.105(D)).)   This includes threatening behavior such as "[w]ords, actions, or other behavior which expresses an intent to injure or physically abuse another

person." (*Id.*, PageID.817 (Attachment A).)  McCoy does not allege or show that Holley usually let threatening behavior slide without consequence.  *Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (explaining that a plaintiff could still establish retaliatory motive where the misconduct charge was true by, for example, showing that he regularly engaged in the misconduct without consequence up until the protected conduct).   In the opinion of the undersigned, CO Holley has met his burden of establishing that he would have written the threatening misconduct ticket regardless of McCoy's protected conduct.   Accordingly, in the opinion of the undersigned, Holley has shown that he is entitled to summary judgment.

### B.  Sgt. Coronado

McCoy says that while he was in segregation, Defendant Coronado retaliated against him, stating McCoy was there because he "writes grievances" and threatened that "next we'll steal your property."  (ECF No. 1, PageID.5.)  First, Defendants argue that McCoy cannot satisfy the second element of his retaliation claim because the verbal abuse asserted was *de minimis* and would not deter a person of ordinary firmness from filing grievances.  (ECF No. 38, PageID.126.)  Second, Defendants assert that McCoy cannot satisfy the third element of his claim because there is no causal connection between McCoy's protected conduct and Coronado's alleged statement.  (*Id.*, PageID.125−26.)

To establish the second element of a retaliation claim, a prisoner-plaintiff must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175

F.3d at 396.   The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.   The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence.   *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

The Sixth Circuit has recognized that some threats are simply too minimal to constitute adverse action for First Amendment purposes. *Thaddeus-X*, 175 F.3d at 396, 398.   In *Thaddeus-X*, the court held that minor verbal harassment is insufficient to constitute adverse action, because recognition of such a standard would "trivialize the First Amendment." *Thaddeus* 175 F.3d at 398-99 (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).   Indeed, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities."   *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)).

In *Hill*, the Sixth Circuit found "actions that result in more restrictions and fewer privileges for prisoners are considered adverse."   630 F.3d at 474.   In the past, the court has found that sufficiently adverse actions included confiscation of legal papers and other property.   *See Bell*, 308 F.3d at 604; *see also Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("[E]ven though his Class I misconduct was reduced to a Class II misconduct at his hearing, Watson lost his radio as a result and the Class II misconduct became part of his prison record. This is substantially more than a *de minimis* consequence for someone confined in a prison cell."); *Hall v. Sutton*, 755

13

F.2d 786, 787–88 (11th Cir. 1985) (holding that an inmate stated a First Amendment retaliation claim based upon the confiscation of his tennis shoes).

Defendants argue that Coronado's alleged statement to McCoy should be characterized as merely verbal abuse that should be regarded as *de minimis* in nature.    (*Id.*, PageID.126.)    However, the statement is more accurately characterized as a specific threat of harm.   McCoy asserts in his verified complaint and affidavit that Coronado told him that if he continued to write grievances, his property was at risk of being confiscated.   (ECF No. 1, PageID.5; ECF No. 40-1, PageID.205.)   McCoy wrote Grievance <u>AMF-22-04-622-26B</u> asserting much the same.   (ECF No. 40-6, PageID.235.)   McCoy appealed that Grievance through Step III.   (*Id.*, PageID.239.)   In his deposition, McCoy stated that "because [MDOC staff] are a team and they work together", inmates were generally "scared to speak up" or "write a grievance."   (ECF No. 41-1, PageID.261−62.)

The threat of a loss of one's property surpasses minor harassment that prisoners are expected to endure.   Because the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted, McCoy's subsequently filed grievance and appeals related to the threat are not relevant to the present analysis.   Coronado's threat would deter a person of ordinary firmness from exercising their First Amendment rights.   As such, in the opinion of the undersigned, McCoy has alleged sufficient facts to establish the second element of his First Amendment Retaliation claim against Coronado.

After a prisoner establishes the first two elements of their retaliation claim, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith*, 250 F.3d at 1037 (citing *Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287). Once a prisoner has established this, the burden of production shifts to the defendant to show they would have taken the same course of action in the absence of the protected conduct. *Thaddeus-X,* 175 F.3d at 399.

The Defendants argue that McCoy failed to establish the causation element of his First Amendment claim against Coronado because of his reliance on the timing of events and conclusory statements. (ECF No. 38, PageID.125.) They assert that there is no factual evidence that create a causal connection between Coronado's alleged statement and "any protected conduct." (*Id.*, PageID.126.) In his verified complaint and response, McCoy implies that Coronado's threat to remove the Plaintiff's property was substantially motivated by Coronado's desire for him to stop filing grievances. (ECF No. 1, PageID.5; ECF No. 40-1, PageID.205.) McCoy however, asserts no other facts to support the causal connection between Coronado's alleged statement and the filing of grievances.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d

15

at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

In this action, McCoy merely alleges the ultimate fact of retaliation. (ECF No. 1, PageID.5; ECF No. 40-1, PageID.205.) He has not presented any facts to support his conclusion that Defendant Coronado retaliated against him because he filed a grievance against some other officers. Although McCoy does present his grievances against Coronado, he has not presented facts suggesting he had interactions with Coronado prior to the alleged threat or that any property was ever actually taken from him. (No. 1, PageID.5; ECF No. 40-1, PageID.205; ECF No. 41-1, PageID.260.) Accordingly, McCoy's speculative allegation fails to present evidence creating a genuine issue of material face. Coronado should be granted summary judgment on the First Amendment retaliation claim against him.

### C. PC Bastian

In his complaint, McCoy alleges three separate instances of retaliatory conduct by Defendant Bastian. (ECF No. 1, PageID.3−5.)

### a. Instance 1: April 8, 2022

First, McCoy alleges that during an April 8, 2022 conversation about a package, Bastian told him, "I hope you don't plan on filing anymore stupid grievances," and that if he did, then Bastian "or one of his co/workers would put [McCoy] in administrative segregation." (*Id.*)  Defendants argue that this claim fails on the second element because, based on McCoy's subsequent actions, no reasonable jury could find that Bastian's statement would deter a person of ordinary firmness from filing grievances.  (ECF No. 38, PageID.127.)

Sixth Circuit precedent is clear that "[a]ctual deterrence need not be shown" for a First Amendment retaliation claim to succeed.  *Hill*, 630 F.3d at 472 (internal quotation and emphasis in original omitted).  Instead, threats alone are enough to establish an adverse action took place as long as the threats are not "de minimis." *See Thaddeus-X*, 175 F.3d at 398–99; *Hill*, 630 F.3d at 472–73.  Relevant here, courts have found that threats to transfer a prisoner to administrative segregation or more restrictive housing are enough to deter a person of ordinary fitness from engaging in protected conduct.  *See Thaddeus-X*, 175 F.3d at 398; *Maben v. Shaheen*, No. 17-10817, 2018 WL 3298076, at *5 (E.D. Mich. Jan. 31, 2018) (saying that the threat of a transfer to "a more restrictive living environment with fewer privileges (e.g. a segregation unit)" could rise to the level of an adverse action), *report and recommendation adopted*, No. 17-cv-10817, 2018 WL 1391540 (E.D. Mich. Mar. 20, 2018); *Sumpter-Bey v. Weatherford*, No. 3:11-cv-130, 2011 WL 3475500, at *5 (M.D. Tenn. Aug. 9, 2011) (same), *report and recommendation adopted*, No. 3:11-cv-130, 2011 WL 3841845 (M.D. Tenn. Aug. 30, 2011).

Here, McCoy alleged that Bastian threatened to transfer him to administrative segregation if he did not stop filing grievances against other staff members.   (ECF No. 1, PageID.3.)   Contrary to Defendants' assertion, it is not significant to the analysis at this stage whether the threat *actually* deterred McCoy from filing grievances.   *See Hill*, 630 F.3d at 472.   Indeed, Bastian's alleged threat did not stop McCoy from filing grievances; he filed at least five more grievance in the nineteen days that followed the interaction.   (ECF No. 1, PageID.3-5.)   Instead, it is enough that McCoy alleged Bastian threatened to transfer him to a more restrictive living environment, as a threat of transfer is considered sufficient to deter an ordinary person from engaging in protected conduct and is thus an adverse action.   *See Maben*, 2018 WL 3298076, at *5.

Thus, the undersigned respectfully recommends that the Court deny the Defendants' motion for summary judgment relating to McCoy's April 8, 2022 retaliation claim.

### b.  Instance 2: April 15, 2022

Second, McCoy alleges that during an April 15, 2022 meeting about a Notice of Intent, Bastian told McCoy to "stop writing grievances because most of the grievances were stupid and had no merit."   (ECF No. 1, PageID.4.)   Defendants argue that this claim too fails at the second element.   (ECF No. 38, PageID.128.)   First, they argue the statement constitutes *de minimis* verbal harassment.   (*Id.*)   Second, they argue that McCoy's subsequent actions would prevent a reasonable jury from finding that the statement would deter a person of ordinary firmness from filing grievances.   (*Id.*)

18

While a plaintiff need not show actual deterrence to establish an adverse action, they must show that the alleged conduct is capable of deterring a person of ordinary firmness from engaging in the relevant protected action.   *See Hill*, 630 F.3d at 472; *Bell*, 308 F.3d at 606.   Minor verbal harassment alone is insufficient to constitute such an adverse action.   *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625).

In keeping with Sixth Circuit precedent, the undersigned concludes that the verbal harassment alleged here would not deter a person of ordinary firmness from exercising their First Amendment right in filing grievances.   McCoy does not provide the Court with any facts that would take his allegations of verbal abuse outside the category of *de minimis* harm.   McCoy states only that during this encounter, Bastian "mentioned the grievance plaintiff filed on him on April 7, 2022 for reading his legal materials during his request for legal photocopies."  (ECF No. 1, PageID.4.)   He says that because "Defendant Bastian is not the grievance coordinator . . . it is not his job to question plaintiff about any grievance."  (*Id.*)   McCoy does not allege that Bastian threatened him during this encounter, nor does he assert that Bastian's conduct strayed beyond calling his grievances "stupid."  (*Id.*)   While perhaps rude, Bastian's characterization of McCoy's grievances does not stray beyond the level of verbal harassment prisoners are expected to endure.   As a result, the undersigned concludes that the alleged verbal abuse does not rise to the level of an adverse action for purposes of a retaliation claim.

19

The undersigned respectfully recommends that the Court grant Defendants' summary judgment motion relating to McCoy's April 15, 2022, retaliation claim.

### c.  Instance 3: April 26, 2022

Third, McCoy alleges that on April 26, 2022 he received his classification screen review, during which Bastian "conspired with defendants Bradley and Haynie to delay [his] security classification to a lower security [level]."  (ECF No. 1, PageID.5.)   Defendants argue that McCoy's allegations of conspiracy are inadequate to survive summary judgment.  (ECF No. 38, PageID.129−30.)   First, they assert that the allegations do not satisfy the requisite burden to survive.  (*Id.*)   Second, they assert that McCoy cannot bring a conspiracy claim against Batian because it is barred by the intra-corporate conspiracy doctrine, as all Defendants were under the collective entity of the MDOC.   (*Id.*)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (*quoting Hooks v. Hooks*, 771 F.2d 935, 943 44 (6th Cir. 1985)).   The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).   Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be

supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

However, the inquiry does not end there. We must also determine whether an individual can be held liable for conspiracy when the alleged conspiracy was undertaken by agreement with another individual or individuals employed by the same entity as the defendant.   The Sixth Circuit has found that the intracorporate conspiracy doctrine applies to § 1983 suits.   *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019).   The doctrine states that if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy," unless they are acting outside the scope of their employment.   *Id.* (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)).

There exists no evidence that can support a conspiracy claim.   McCoy says that on April 26, 2022, he received his security classification screen review.   (ECF No. 1, PageID.5.)   McCoy states that Bastian "previously threatened to delay [his] proper classification to a lower level" and "conspired with defendants Bradley and Haynie" to delay a lowering of his level.   (*Id.*)   He asserts that the "adjust pretext" was their justification for the delay.   (*Id.*)

Defendants show that Bastian did not participate in the security classification screen review, instead demonstrating that Haynie and Bradley completed the screen review together on April 22, 2022.   (ECF No. 38-2, PageID.163.)   In their review,

Haynie and Bradley noted that lowering McCoy's security level was delayed "to monitor [his] adjustment." (*Id.*) Shown below is the screen review report:



(*Id.*)

McCoy has failed to set forth specific facts that establish a conspiratorial objective or that Defendants engaged in conspiratorial conduct in conducting the security classification screen review.    Even if McCoy had properly alleged the necessary facts to support a conspiracy claim, the claim would be barred by the intracorporate conspiracy doctrine because all individuals in the alleged conspiracy are employees of the same entity, the MDOC.    *See Evans v. Washington*, No. 1:19-CV-953, 2019 WL 6974735, at *4–*5 (W.D. Mich. Dec. 20, 2019).    In the opinion of the undersigned, Defendants have established that no genuine issue of fact exists which could support McCoy's conspiracy claims against them.

Thus, in the opinion of the undersigned, McCoy has failed to create a genuine issue of material fact as to his retaliation claims against Defendant Holley, Defendant Coronado, and Defendant Bastion as to his alleged threat of retaliation on April 15, 2022 and his alleged conspiratorial act on April 26, 2022.    McCoy has successfully created a genuine issue of material fact as to his retaliation claim against Bastian for retaliation occurring on April 8, 2022.

## V.  Qualified Immunity

Defendants argue that they are entitled to dismissal of the complaint against them based upon qualified immunity.    "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

*Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or

24

constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017)

(internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*,

136 S. Ct. 305, 308 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

25

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.  *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

### A.  Holley

CO Holley also argues that he is entitled to qualified immunity because it cannot be disputed that McCoy's threatening behavior, and not his protected conduct, was the reason he issued the misconduct ticket.

Defendant Holley's claim for qualified immunity is largely redundant. Holley argues that because he did not violate McCoy's constitutional rights, he is entitled to qualified immunity.[1]  It is the undersigned's opinion that CO Holley is entitled to summary judgment in his individual because there are no genuine issue of material fact suggesting that Holley violated McCoy's First Amendment rights. *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

### B. Coronado

---

[1]    In other words, Defendants do not argue that the rights at issue were not clearly established.

Defendant Coronado asserts that he is entitled to qualified immunity because the facts alleged do not make out a constitutional violation against McCoy.   (ECF No. 38, PageID.127.)   Similarly to Holley, Coronado does not argue that the rights at issue were not clearly established and instead merely asserts there was no constitutional violation.   It is the opinion of the undersigned that Coronado is entitled to summary judgment because there are no genuine issues of fact and no facts suggesting he violated McCoy's First Amendment rights.   *See Phillips*, 534 F.3d at 538.

### C. Bastian

Defendant Bastian asserts that he is entitled to qualified immunity because the facts alleged in relation to Instances 1 and 2 do not make out constitutional violations against McCoy.   (ECF No. 38, PageID.128.)   Similarly to both Holley and Coronado, Bastian does not argue that the rights at issue were not clearly established.   (*Id.*, PageID.127−28.)   Instead, he asserts there was no constitutional violation.   (*Id.*)

Because there are genuine issues of fact as to the alleged act of retaliation on April 8, 2022, and it is the undersigned's opinion that Defendant Bastian did violate McCoy's First Amendment rights, it is the undersigned's opinion that Defendant Bastian is not entitled to qualified immunity in his individual capacity in relation to this claim.   *See id.*

However, there are no genuine issues of fact as to the alleged act of retaliation on April 15, 2022 nor the alleged conspiratorial conduct on April 26, 2022. Thus, it is

the undersigned's opinion that Defendant Bastian did not violate McCoy's First Amendment rights. Therefore, Defendant Bastian is entitled to qualified immunity in his individual capacity related to these two claims.    *See Phillips*, 534 F.3d at 538.

## VII.   ECF No. 42

Defendants filed their motion for summary judgment on March 18, 2024. (ECF No. 37.)    McCoy filed his response in opposition on April 11, 2024. (ECF No. 40.)   Defendants filed their reply to McCoy's response on April 22, 2024. (ECF No. 41.)    McCoy filed an unauthorized sur-reply on May 5, 2024. (ECF No. 42.)

Rule 7.2(c) of this Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response.    W.D. Mich. LCivR 7.2(c).   Under the same rule, "[t]he court may permit or require further briefing."    *Id.*    McCoy never requested leave from this Court to file his sur-reply.    Pro se litigants are expected to know and comply with the Federal Rules of Civil Procedure as well as the Local Rules. *See Fields v. Cnty. of Lapeer*, No. 99-2191, 2000 WL 1720727, at *2 (6th Cir. Nov. 8, 2000); *Williams Huron Gardens 397 Tr. v. Waterford Twp.*, No. 18-12319, 2019 WL 659009, at *1 (E.D. Mich. Jan. 26, 2019) ("Though plaintiffs are representing themselves, they are nevertheless, expected to know and adhere to the rules governing litigation in the court.").    Therefore, the undersigned respectfully recommends that the Court strike McCoy's unauthorized sur-reply.

## VIII.   Recommendation

It is respectfully recommended that the Court grant Defendants' motion in part and deny in part, as follow:

- grant Defendant Holley's motion for summary judgment, and dismiss Holley from the case,

- grant Defendant Coronado's motion for summary judgment, and dismiss Coronado from the case,

- deny Defendant Bastian's motion for summary judgment as to his alleged threat of retaliation on April 8, 2022,

- grant Defendant Bastian's motion for summary judgment as to his alleged threat of retaliation on April 15, 2022,

- grant Defendant Bastian's motion for summary judgment as to his alleged conspiratorial act on April 26, 2022, and

- strike McCoy's unauthorized sur-reply.

If the Court adopts this recommendation, then only McCoy's retaliation claim against Bastian for retaliation occurring on April 8, 2022 will remain in the case.

Dated:   December 5, 2024          /s/ *Maarten Vermaat*
                                   MAARTEN VERMAAT
                                   U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).